United States District Court
Southern District of Texas
**ENTERED**
February 26, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Joshua H., | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-24-4846 |
| | § | |
| Frank Bisignano,[1] | § | |
| Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant*. | § | |

**MEMORANDUM AND RECOMMENDATION**

Joshua H. appeals the Social Security Administration Commissioner's final decision denying his application for social security benefits. ECF No. 1. This case has been referred to the undersigned magistrate judge for all pretrial purposes. ECF No. 8. Pending before the court are Plaintiff's Motion for Summary Judgment and Brief in Support, ECF Nos. 11, 12, and Defendant's Motion for Summary Judgment and Response in Opposition to Plaintiff's Brief, ECF No. 16. Joshua H. also filed a Reply. ECF No. 19. The court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and that Defendant's Motion for Summary Judgment be **GRANTED**.

### 1. *Procedural Posture*

Joshua H. applied for social security benefits under Title II of the Social Security Act on September 7, 2023. Tr. 175–76. He alleged a disability onset date of May 6, 2022. Tr. 177. The Social Security Administration (SSA) denied Joshua H.'s application

---

[1] Frank Bisignano is Commissioner of the SSA and is automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

initially on October 9, 2023, Tr. 45–46, and upon reconsideration on January 18, 2024, Tr. 54–55.

Administrative Law Judge (ALJ) David J. Hebert held a telephonic hearing on June 3, 2024. Tr. 11–38. At the hearing, the ALJ heard testimony from Joshua H. and a vocational expert (VE). Tr. 13. Joshua H.'s counsel was present and had the opportunity to examine the witnesses. Tr. 16–22, 37.

At the hearing Joshua H.'s counsel examined him. He testified that he had been in the military but had been found 100% disabled by the Veteran's Administration. Tr. 16. That finding was based on prior suicide attempts and his inability to be out in public. Tr. 17. Joshua H. testified that he experienced anger and frustration that led to difficulties in his previous jobs, such as yelling at supervisors and being aggressive. Tr. 17–18. Joshua H. rarely left the house, did not like being around strangers, and could not go to the store by himself. Tr. 18–19. Because of his depression, Joshua H. sometimes spent entire days in bed. Tr. 19. His wife performed most of the tasks around the house, but Joshua H. would contribute with his wife's assistance. Tr. 20. He was on several medications for depression, anxiety, sleep issues, and high blood pressure, all of which made him tired. *Id.* Despite the medications, Joshua H. still had anger issues twice per day. Tr. 20–21. He handled those emotions by isolating himself for an hour each time. Tr. 21. While Joshua H. did not have difficulties eating and grooming, he only did those things when reminded by his wife. *Id.* He spent most of his days watching television and playing games with his kids. Tr. 22

Before turning the examination over to the ALJ, the ALJ asked Joshua H.'s counsel whether the Claimant was "alleging any physical impairments." Tr. 22. Counsel stated "No, Your Honor, the crux of this case is mental." *Id.*

The ALJ examined Joshua H. He testified that he was in the Army for four years and then worked for five years as a civilian contractor. Tr. 24–25. He worked as an intelligence analyst. Tr. 24. His highest rank was sergeant/E-5, and he was honorably discharged from the military in June 2009. Tr. 25. After the military, Joshua H. worked at National Cash Register servicing ATM machines. Tr. 25–26. That work did not involve being around others but did involve both servicing the physical ATM machine as well as working on the machine's computerized operating system. Tr. 26–27. The ALJ commented on the fact that Joshua H.'s mental impairments were caused by his military service, which ended in 2009, yet Joshua H. was able to work up to 2022. Tr. 28. Joshua H. stated that he was able to work despite his mental impairments because his supervisor gave him "a lot of leeway," but Joshua H. had no documentation of that fact. *Id.* Joshua H. testified that he saw his VA therapist every three months but was not receiving any other therapy. Tr. 29.

The VE testified next. She noted that Joshua H.'s past work history also included six months in a management position at National Cash Register, which Joshua H. confirmed was strictly a management job, and did not involve servicing the ATMs. Tr. 33. Thus, Joshua H.'s past relevant work was Automatic Teller Machine Servicer, which was a light, skilled job; and Customer Service Manager, which was a light, highly skilled job, which he was performing at the medium exertion level. Tr. 33–34.

The ALJ posed a series of hypothetical questions to the VE. He asked the VE first to assume a person of the same age, education and past work experience as Joshua H.; who had no exertional limitations; could understand, remember, and carry out complex tasks; should never work at forced-paced assembly line or production-rate jobs; should not have jobs dealing with the public; and could only occasionally deal with co-workers and supervisors.

3

Tr. 34–35. According to the VE, such a person could perform Joshua H.'s past work as an ATM Servicer, but not as a Customer Service Manager. Tr. 35. Such a person could also obtain work available in the national economy as a kitchen helper/dishwasher, a warehouse worker, or a merchandise marker. Tr. 35–36. When asked about the same hypothetical worker with additional limitations to having "good days and bad days" and would thus miss three days of work per month, the VE stated that such a person could not obtain any work. Tr. 36. Joshua H.'s attorney added to the ALJ's first hypothetical limitations that either the person would have to work in isolation or that the person would need frequent reminders to stay on task. Tr. 37. The VE testified that, in either case, the person would be precluded from all employment. Tr. 37.

The ALJ issued his decision on July 24, 2024, finding that Joshua H. was not disabled from May 6, 2022, through the date of the decision. The Appeals Counsel denied Joshua H.'s request for review of the ALJ's decision on October 7, 2024. Tr. 1–5. Joshua H. filed his complaint in federal court on December 10, 2024. ECF No. 1.

### 2. *Legal Standards*

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and were disabled "on or before the date . . . last insured." *See* 42 U.S.C. § 423; *Schofield v. Saul*, 950 F.3d 315, 319 (5th Cir. 2020). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield*, 950

F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision but may not reweigh the evidence or substitute its judgment. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. Analysis

#### A. Step One

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b).

The ALJ found that Joshua H. had not engaged in substantial gainful activity since May 6, 2022, the alleged onset date. Tr. 63. This finding is not in dispute.

### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (citing 20 C.F.R. § 404.1509). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "[A]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Johnson v. Colvin*, 595 F. App'x 443 (5th Cir. 2015) (quoting *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Joshua H. had severe impairments of post-traumatic stress disorder (PTSD), anxiety disorder, and depression. Tr. 63. The ALJ found that none of Joshua H.'s physical impairments were severe. *Id.* The ALJ considered all of Joshua H.'s medically determinable impairments, both severe and non-severe in determining Joshua H.'s residual functional capacity. Tr. 65. Thus, any error in the ALJ's severity findings would be harmless. *See Esparza v. Saul*, No. 3:19-CV-2284, 2020 WL 6551272, at *13 (N.D. Tex. Oct. 2, 2020) (citing cases and stating that "[t]he Fifth Circuit has stated that a failure to make a severity finding at step two is not reversible error when an ALJ continues with the sequential evaluation process"). In any event, the ALJ's findings are supported by substantial evidence and are not in dispute.

### *C. Step Three*

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). 20 C.F.R. § 404.1520(a)(4)(iii). The Listing describes impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. § 404.1525(a). If all the criteria of a Listing section are met or equaled, the claimant is considered disabled. 20 C.F.R. § 404.1520(d); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that an impairment meets or equals the specified medical criteria. *Whitehead*, 820 F.3d at 779.

The ALJ found that Joshua H. did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listing. Tr. 65–66.

The ALJ considered several Listing sections relevant to Joshua H.'s mental impairments—Listing sections 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). Each of those Listings sets forth certain criteria that must be met to qualify for the listing. Each listing has its own Paragraph A, and each shares the same criteria for Paragraphs B and C. *See* Listing § 12.00(E) (paragraph B criteria) and (G) (paragraph C criteria). To be found disabled at this step with respect to any of the Listings at issue here, a claimant's mental disorder must satisfy the requirements of both paragraphs A and B, or both paragraphs A and C. *Id.* Thus, a claimant who does not satisfy either of paragraphs B or C does not meet any of the Listings under consideration here.

The paragraph B criteria relate to four broad areas of mental functioning a person uses in a work setting. Listing § 12.00(E).

Those four areas are the applicant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* The ALJ must evaluate the claimant's ability to function using this rating scale:

1. No limitation (or none). [Claimant is] able to function in this area independently, appropriately, effectively, and on a sustained basis.

2. Mild limitation. [Claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

3. Moderate limitation. [Claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

4. Marked limitation. [Claimant's] functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

5. Extreme limitation. [Claimant is] not able to function in this area independently, appropriately, effectively, and on a sustained basis.

Listing § 12.00(F)(2). To meet the paragraph B criteria, a claimant's disorder must result in an "extreme" limitation in one, or a "marked" limitation in two of the four areas of mental functioning. *Id.* The ALJ found that Joshua H. had only moderate or mild limitations in each of the four areas. Tr. 65–66.

The ALJ found that Joshua H. had only a mild limitation in understanding, remembering, or applying information. Tr. 65. The ALJ recognized that Joshua H. had some memory impairment, such as forgetting names and directions and that his wife stated he would get frustrated when trying to follow written instructions. Tr. 65. On the other hand, the ALJ noted that Joshua H. remembered the details about his medical treatment, doctors, appointments, and medications, and that he would help his

children with homework. *Id.* The ALJ noted that Joshua H. had earned an online degree in cybersecurity and that he had a license as a loan servicer. *Id.* Ultimately, the ALJ found that "[n]o cognitive deficits have been identified." *Id.*

As for interacting with others, the ALJ found a moderate limitation. Tr. 65. The ALJ considered Joshua H.'s reports of irritability and anger, that Joshua H. may have lost his job for arguing with his boss, that he has difficulty with crowds, and that he does not leave the house without his wife. *Id.* On the other hand, the ALJ noted that Joshua H. may have lost his job because his team was being shut down, and that he reported taking his children to school. *Id.* The ALJ considered the fact that Joshua H. interacted appropriately with health care providers by himself, and that there was no evidence he acted inappropriately with health care providers. *Id.*

The ALJ found only a mild limitation in Joshua H.'s ability to concentrate, persist, or maintain pace. Tr. 65. There were no records to confirm Joshua H.'s ADHD diagnosis. *Id.* While Joshua H. reported being able to sustain concentration for only a few minutes, he was also able to complete an online degree, read for pleasure, and earn a license as a loan servicer after the alleged onset date. Tr. 65–66. There were no treatment records showing "attentional deficits." Tr. 66.

In terms of adapting or managing himself, the ALJ found that Joshua H. had a moderate limitation. Tr. 66. Joshua H. reported an inability to tolerate stress or change; experienced chronically poor sleep, had difficulty with crowds; and would have a panic attack after five minutes in a store. *Id.* He would have road rage and panic attacks when driving. *Id.* At the same time, Joshua H. could use a computer, take care of his personal needs, and perform chores and yard work. *Id.* He kept up with his own

medical treatment and medications and effectively advocated for himself. *Id.*

Finding no extreme or marked limitations in any functional area, the ALJ concluded that Joshua H. did not satisfy the paragraph B criteria. Tr. 66. He also found no evidence of any of the Paragraph C criteria. *Id.*

The ALJ's step three determination is supported by substantial evidence. The step three findings are not directly in dispute, although Joshua H. maintains that the ALJ did not consider his own step three findings in formulating the RFC, which is discussed below. Joshua H. does not point out any evidentiary or legal error in the ALJ's step three findings. The ALJ did not cite any specific part of the record when making the step three findings, but, having reviewed the record and the briefing, the court detects no error—legal or factual.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e) (citing 20 C.F.R. § 404.1545). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, 4 (July 2, 1996). The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e); *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); *Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir. 2012) ("[T]he determination of residual functional capacity is the sole responsibility of the ALJ.").

10

The ALJ determined that Joshua H. had the RFC to perform a full range of work at all exertional levels, but with these non-exertional limitations:

> He can understand, remember, and carry out complex tasks; he can never perform forced pace, assembly line, or production rate jobs; he can never deal with the general public; and he can occasionally relate to coworkers and interact with supervisors.

Tr. 66.

In making this determination, the ALJ considered the entire record, including Joshua H.'s hearing testimony and statements he made to medical providers, his two function reports, his wife's third-party function report, the medical records, and various statements and opinions of Joshua H.'s medical providers. Tr. 67–73.

As for Joshua H.'s statements at the hearing and to medical providers, as well as the statements of his wife, the ALJ's summary of those statements is consistent with Joshua H.'s hearing testimony, which the court summarized above. Essentially, Joshua H. maintains that he is extremely limited mentally. He states that he cannot function independently either at home or in public in any meaningful way. He cannot shop, drive, or take care of himself without reminders. Tr. 67–69. The ALJ found that, while Joshua H.'s medically determinable impairments could reasonably be expected to cause the symptoms Joshua H. alleged, the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. Tr. 69. The court turns next to an analysis of that finding. The court notes first that the ALJ's decision contains a lengthy discussion of Joshua H.'s physical symptoms and medical findings. There appears to be no allegation that Joshua H. is physically limited, given counsel's statement at the hearing, quoted above. Moreover, the summary judgment briefing does not

address Joshua H.'s physical impairments. It does not appear that Joshua H. has any physical limitations that would require limitations in the RFC. It is undisputed that he works out at the gym five times per week, that he can perform chores at home, and that his recent past work involved lifting. The RFC's omission of any physical limitations is supported by substantial evidence and is consistent with the law. Because the briefing does not address Joshua H.'s physical RFC, neither does the court.[2]

In terms of mental limitations, the ALJ recognized that Joshua H. had a diagnosis of PTSD, and that he reported significant symptoms related to that diagnosis. Tr. 70. The symptoms he reported in the medical records are generally in line with his hearing testimony. Tr. 70–71. The ALJ compared those reported symptoms to other mental status examinations in the record. For example, a mental status exam on February 16, 2021, outside the relevant period, showed him to be "irritable," but was otherwise normal. *Id.* (citing 10F/331; Tr. 1114). Another cited mental status exam on November 16, 2022, within the relevant period, was similar. *Id.* (citing 10F/270; Tr. 1053). The ALJ cited another examination report dated November 8, 2023, which showed that Joshua H. was going to the gym five times per week, and was staying busy with chores, reading, and spending time with his children. Tr. 71 (citing 10F/171; Tr. 952). The mental status exam during that visit showed him to be in a "low" mood, but to have, among other things, linear and goal-directed thought processes; no delusions; "good" insight and judgment; and intact attention, concentration, and cognition. Tr. 953–54. The same was true in March 2024. Tr. 71 (citing 10F/126; Tr. 909). The court

---

[2] In his Reply, Joshua H. states that he "never denied having physical limitations." ECF No. 19 at 9. There is no argument that he has physical impairments that would require limitations in the RFC.

notes that during the latter visit, Joshua H. self-reported that he was severely limited in many areas, Tr. 903–08, but the mental status examination noted no problems. Tr. 909. The ALJ characterized that mental status examination as "generally unremarkable." Tr. 71.

The ALJ also reviewed the opinions and prior administrative findings in the record. State Agency psychological consultant Dr. Nicole Mannis reviewed Joshua H.'s medical records and evaluated the paragraph B criteria mentioned above. Dr. Mannis found that he had moderate limitations in his ability to understand, remember, and apply information, and to adapt and manage himself. Tr. 72 (citing Ex. 1A). She found no limitation in his ability to interact with others or to concentrate, persist or maintain pace. Tr. 42. She found that Joshua H. could understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting. Tr. 44. The ALJ found that the opinion was supported by Joshua H.'s report that he needs reminders, gets road rage, and has memory problems. Tr. 72. The ALJ further found that the opinion was not consistent with Joshua H.'s reports that medication would control his nightmares and anxiety, but that it was consistent with his inability to tolerate stress, his anger, and his inability to leave the house without his wife. *Id.* It was also inconsistent with his report of losing his job because of an angry outburst, his inability to tolerate crowds, and his restlessness and history of ADHD. *Id.* Thus, the opinion was only partially persuasive. *Id.*

There were several other statements in the record that the ALJ did not consider to qualify as opinions, so he did not analyze their consistency or supportability, although he did consider the statements themselves. Certain VA medical records addressed the

VA's view of disability, but that question is left to the Commissioner to determine under the Commissioner's rules and criteria, which are different from the VA's. Tr. 72; *see* 20 C.F.R. §1504. Dr. Renee McPherson Watson found insufficient evidence to form an opinion because Joshua H. did not cooperate with the development of the record. Tr. 72–73. Drs. Julia Jackson and Tyesha Alexander examined Joshua H. and the ALJ considered those examination records, but neither presented an opinion for the ALJ to evaluate. Tr. 70–71. While the ALJ did not evaluate the persuasiveness of the forgoing medical statements, he did consider the evidence.

The RFC was determined according to the appropriate legal framework and is supported by substantial evidence. Specifically, there is no evidence that Joshua H. is physically limited in a way that would require work limitations. Moreover, each of the psychological limitations is supported by the record. The ALJ considered all of the evidence in the record and weighed its credibility. While Joshua H. testified about and reported to his medical providers many disabling symptoms, the ALJ did not credit all of his statements. Mental status examinations were mostly normal, and Joshua H. has a history of working skilled jobs and seeking out educational opportunities. None of the evidence that the ALJ found credible supports further limitations with respect to Joshua H.'s ability to understand, remember, and carry out tasks. As the ALJ summarized in his Decision, Joshua H. is able to use computers well, held a job as an ATM repair person for six years, and was able to earn an online degree. In conjunction with many normal or near normal mental status exams, these facts fully support the RFC. Joshua H.'s anger issues, problems with crowds, and difficulties interacting with others are all accounted for in the RFC by limiting him to no forced pace, never dealing with

the public, and only occasionally interacting with co-workers and supervisors.

Joshua H. argues that the ALJ violated the Fifth Circuit's holding in *Ripley v. Chater* when he rejected all medical opinions and determined the RFC without a supporting medical opinion. ECF No. 12 at 9 (citing *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995)). The regulations do not prohibit the ALJ from assessing the claimant's RFC based on other record evidence when the ALJ finds the available medical opinions to be unpersuasive. 20 C.F.R. §§ 404.1545(a)(1), (a)(3), (e). The regulations place the responsibility upon the ALJ to assess a claimant's RFC "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1); *see also* 20 C.F.R. § 404.1546(c). Courts regularly affirm ALJ decisions where all medical opinion evidence has been rejected as unpersuasive. In the absence of medical opinions, courts have found evidence such as MRI and EEG test results, neurophysiological studies, treating physician remarks, physical examinations, and the claimant's own testimony to be substantial evidence to support the ALJ's RFC determination. *See Taylor,* 706 F.3d at 603 (considering MRI and EEG results, neurophysiological studies, and treating physician remarks); *Garza v. Astrue,* No. M-09-133, 2013 WL 2432421, at \*15–16 (S.D. Tex. June 3, 2013) (considering physical examinations and general medical evidence); *Gutierrez v. Barnhart,* No. 04-11025, 2005 WL 1994289, at \*7 (5th Cir. Aug. 19, 2005) (per curiam and unpublished opinion) ("the ALJ's determination of Gutierrez's residual functional capacity is based on substantial evidence even without such a medical opinion").

In *Ripley,* the Fifth Circuit remanded the case because, among other errors, the ALJ found the claimant was capable of sedentary work "even though there was *no medical testimony* supporting this conclusion." 94 F.3d at 557 (emphasis added). The

15

court pointed out that "[t]he absence of such a [medical source] statement . . . does not, in itself, make the record incomplete." *Id.* The court explained that, in the absence of a medical statement, the court focuses on whether the ALJ's decision is supported by substantial evidence in the existing record. *Id.* The court concluded that the ALJ's opinion was not supported by substantial evidence because the record contained "a vast amount of medical evidence" establishing an impairment that the ALJ did not consider in formulating the RFC. *Id.*

Here, the evidence that Joshua H. seeks to have the court rely on is mostly his own self-reported symptoms (to medical providers, during the hearing, and in his function reports) and his wife's function report. The ALJ did not find those statements to be fully credible and instead relied on other evidence in the record. The record is replete with evidence supporting the RFC. Moreover, the RFC accounts for most of the limitations that Joshua H. claims to have.

Joshua H. also cites *Williams v. Astrue,* 355 F. App'x 828 (5th Cir. 2009). ECF No. 12 at 6. In *Williams*, the Fifth Circuit remanded because "there was *no medical or other evidence* supporting the ALJ's [RFC] determination." *Id.* at 831 (emphasis added). The court found that, once the ALJ refused to give controlling weight to certain medical opinions, there was no evidence left to support the ALJ's RFC finding. The court also pointed out that "the ALJ failed to consider [a] physical therapy discharge summary [that] directly contradicts the ALJ's finding." *Id.* The court concluded that, in the face of contradictory evidence and with no evidence supporting the ALJ's RFC finding, the RFC was not supported by substantial evidence. *Id.* at 832. Importantly, the court explained that *Ripley* stood for the proposition that "an ALJ may not rely on his own *unsupported* opinion as to the

limitations presented by the [claimant's] medical conditions." *Id.* at 832 n.6 (emphasis added) (citing *Ripley,* 97 F.3d at 557).

This case does not present the same problems as *Ripley* and *Williams* did. Here, the ALJ properly considered the single medical opinion in the record and explained why he found it to be partially persuasive. Again, he did not reject all of the opinions. As will be discussed next, there was only one actual opinion in the record— Dr. Mannis's—which he found to be partially persuasive. The ALJ actually found the same or more limitations in the paragraph B criteria than did Dr. Mannis and he disagreed only about Joshua H.'s ability to understand, remember, and apply information, finding only a mild limitation, in comparison to Dr. Mannis's moderate finding. The ALJ then properly considered all of the other evidence in the record as he was required to do. Unlike *Williams* and *Ripley*, the partial exclusion of the sole opinion in the case did not leave the RFC finding without support.

Joshua H. argues that the ALJ failed to articulate how persuasive he found all of the medical opinions in the record. To determine "what weight, if any, to give a medical opinion," ALJs consider a list of factors, outlined in 20 C.F.R. § 404.1520c. In his decision, the ALJ must explain his consideration of the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2). The supportability factor relates to how much the objective medical evidence and the medical source's explanation supports the medical opinion, while the consistency factor relates to the medical opinion's consistency with evidence from other medical sources. 20 C.F.R. §§ 404.1520c(c)(1)–(2). Those rules only apply to actual medical opinions and prior administrative findings, however. *Id.* A medical opinion is defined in 20 C.F.R. § 404.1513(a)(2) to be "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations in

[a list of abilities]." That list of abilities contains the paragraph B criteria discussed above with respect to step three. 20 C.F.R. § 404.1513(a)(2)(ii).

The ALJ considered the reports of two VA physicians—Drs. Jackson and Alexander. Tr. 70–71. Neither Dr. Jackson nor Dr. Alexander provided an actual "opinion." Dr. Jackson's report is an evaluation to determine whether Joshua H. suffered from PTSD. Tr. 339–43. In a check box answer to "which of the following best summarizes the veteran's level of occupational and social impairment," Dr. Jackson checked "occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment thinking and/or mood." Tr. 340. On another part of the form that asked whether Joshua H. met one of the PTSD criteria, the report states that "the PTSD symptoms described above cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." Tr. 343. Nowhere does Jackson describe what Joshua H. could still do despite his impairments, or state whether Joshua H. had any specific restrictions or limitations in any of the paragraph B criteria. It therefore does not qualify as a "medical opinion" under 20 C.F.R. § 404.1513(a)(2) and the ALJ was not required to articulate how persuasive he found it under 20 C.F.R. § 404.1520c(b).

The same is true of Dr. Alexander. In a check box form under the heading "Occupational and Social Impairment," she checked "Total occupational and social impairment." Tr. 349. This appears to be a statement about whether Joshua H. was disabled, which is a determination left to the Commissioner and is therefore "neither valuable nor persuasive to the issue of whether [one] is disabled." 20 C.F.R. § 404.1520b(c)(3)(i). As such, no analysis of Dr. Alexander's statements was required. *Id.* Moreover, nowhere in Dr. Alexander's report does she discuss Joshua H.'s ability to

function or any restrictions or limitations he might have. It is therefore not an opinion that the ALJ was required to consider. 20 C.F.R. § 404.1513(a)(2); 20 C.F.R. § 404.1520c(b).

Plaintiff makes the same arguments with respect to Drs. Adusumilli and Abdali. Joshua H. says that Dr. Adusumilli "opined that he suffered from PTSD, depression and anxiety." ECF No. 12 at 13. He says Dr. Abdali's "diagnoses were PTSD, chronic, and ADHD due to scoring highly for inattention and hyperactivity." *Id.* Again, for the reasons discussed above with respect to Drs. Jackson and Alexander, these are not opinions that required a persuasiveness analysis.

The court also notes with respect to Joshua H.'s complaints about the ALJ's consideration of the several treating and examining physicians that the ALJ generally agreed with their diagnoses. The ALJ found that Joshua H. had severe impairments of PTSD, anxiety disorder, and depression. That is what the above-discussed physicians concluded. The ALJ considered all of the records from the treating physicians in formulating the RFC.

Joshua H. next argues that the ALJ found mild and moderate limitations in each of the Paragraph B criteria yet failed to account for those limitations in the RFC. The court disagrees. The court first notes that Plaintiff seeks to have the ALJ insert limitations reflecting all of Joshua H.'s self-reported symptoms. ECF No. 12 at 14–15. But the ALJ did not fully credit the limiting effects of Joshua H.'s self-reported symptoms. Tr. 69. The court is unaware of a legal rule requiring the ALJ to insert limitations into the RFC for which he did not find evidentiary support. Moreover, the RFC does reflect all of the limitations that the ALJ found. The RFC accounts for the complexity of tasks that Joshua H. can understand, remember and carry out; it limits the pace at which he can work; it keeps him away from the public and thus crowds; and it limits the frequency with which he can interact with co-

workers and supervisors. Tr. 66. Plaintiff points to no evidence that the ALJ credited that would require further limitations in the RFC.

Finally, Joshua H. complains that the ALJ's analysis of his subjective symptoms was flawed. It is unclear to the court what Joshua H.'s complaint is. For example, he states that the ALJ concluded that "Plaintiff did not experience persistence and focus limitations . . . ." ECF No. 12 at 19. But the ALJ did find a mild limitation in that area and accounted for it in the RFC. Tr. 65–66. Joshua H. also argues that the ALJ failed to account for the waxing and waning nature of Joshua H.'s symptoms. ECF No. 12 at 19–20. But the evidence of that is all from self-reports of symptoms, such as Joshua H's hearing testimony and his functions reports, or from his wife's function report, which the ALJ did not fully credit. From the court's review of the record, the ALJ did not formulate the RFC based on Joshua H.'s best days; rather he formulated it based on persistent signs and symptoms. Separate findings on obtaining and maintaining employment are required only in cases where the evidence shows that the claimant's symptoms wax and wane. *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003). The ALJ did not err.

The court finds no error—legal or factual—in the ALJ's RFC assessment.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform his past work by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f); *see also Perez*, 415 F.3d at 462. If the claimant can perform his past work, he is not disabled. 20 C.F.R. § 404.1520(f). If the claimant cannot perform his past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1520(g)(1).

20

The ALJ posed a hypothetical to the VE during the hearing that contained all of the limitations in the RFC that the ALJ ultimately found. Tr. 35, 66. The VE testified that a person of the same age, education, past work history, and limitations as the claimant could perform Joshua H.'s past work as an ATM servicer. *Id.* Based on that testimony, the VE found Joshua H. was not disabled. Tr. 73–74.

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and because Joshua H.'s attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 273–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination).

This finding is supported by substantial evidence and is not in error.

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)).

The ALJ found that Joshua H. could perform jobs that exist in significant numbers in the national economy. Tr. 74. As such he found Joshua H. to be not disabled. *Id.* The ALJ relied on the VE's testimony that an individual of Joshua H.'s age, education, work experience, and RFC would be able to work as a kitchen

21

helper/dishwasher, warehouse worker, or merchandise marker. Tr. 35–36, 74.

As was the case in step four, because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and because Joshua H.'s attorney had the opportunity to cross-examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination.

Accordingly, the ALJ's findings at step five are supported by substantial evidence and are not the product of legal error.

### 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court **RECOMMENDS** that Joshua H.'s Motion for Summary Judgment, ECF No. 11, be **DENIED**; that the Commissioner's Motion for Summary Judgment, ECF No. 16, be **GRANTED**; and that the Commissioner's final decision be **AFFIRMED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal

conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).


Signed at Houston, Texas on February 26, 2025.

_____

Peter Bray
United States Magistrate Judge